Shacjck, J.
The question of first importance is whether this act meets the requirement of section 26 article II of the constitution that ‘ ‘all laws of a general nature shall have a uniform operation throughout the state.”
The briefs of counsel present in a strong light the real and apparent conflict of decision and comment upon the application of this section to statutes said to be repugnant to its provisions. But a number of the cases cited may be dismissed because they are really determined by the consideration believed to be due to other provisions of the constitution relating specially to the various sub-1 jects of the legislation whose validity was questioned; such as those relating to grants of corporate power and those enjoining upon the general assembly the duty of establishing and maintaining public schools.
Still, it would be difficult if not impossible, to reconcile all the conclusions which have been reached concerning the effect of this section. Care seems to have been taken to avoid exact and comprehensive definitions of the phrases “general nature” and “uniform operation;” and from a course of interpretation intended to leave questions of conformity to be determined with respect to different statutes as they might arise, it has resulted that the apparent value of the legislation has sometimes affected. the views that have been entertained respecting its validity. There may also be observed the effect of cautionary suggestions and admonitions supposed to be promotive of conservatism, if not helpful in the discovery of the truth nor likely to contribute to harmonious interpretation. In various phrases it has been said that the members of the lawmaking bodies have *106 knowledge of the limitations upon their power and are mindful of their duty not to transcend them. Harmony is not likely to be found among conclusions which result from the. application of a rule of inconstant force. Some contradictory conclusions upon this subject are the play of the balance in which deference to the constitution has been weighed against deference to the general assembly. Of these cautionary rules one, however, is useful: Acts of the g-eneral assembly should not be adjudged void upon mere doubts as to their validitjr.
But it does not appear to have been advertently held in any case, that this section belongs to the class of constitutional provisions which it has sometimes been thought safe to regard as directory, or more accurately — advisory, merely. On the contrary, there seems to be general acquiescence in the view expressed by Scott, J., in Kelly v. State, 6 Ohio St., 269, where he says that this section is “a general, unqualified and positive prohibition or limitation of legislative power, forbidding the giving of a partial operation to any law of a general-nature, or — in its own affirmative terms— requiring- that a uniform operation throug-hout the state shall be given to all laws of a general nature.”
It is arguing in a circle to say that a law is not of a general nature because its operation is limited. It is implied in this section that there are subjects of legislation of a general nature as to which there is the imperative requirement that the operation of the laws shall be uniform and coextensive with the subjects. Those who framed and adopted the constitution used the phrase “general nature” without definition, as though its meaning were well *107 understood. Whatever doubts may have arisen since the adoption of the constitution as to the effect of this provision when applied to statutes as a test of their validity, it is not supposed that the meaning of the phrase has changed. It is with evident propriety that counsel point to its prior and contemporaneous use in legislation, as indicating the sense in which it was employed in the constitution. Many members of the convention had been members of the general assembly, and others were entirely familiar with the course of legislation under the constitution of 1802. Unless terms which had a well understood meaning are regarded as used according to that meaning, interpretation becomes mere speculation.
In volume eighteen, Laws of Ohio, published in 1820, the acts of the general assembly were published under the titles of “Acts of a General Nature ” and “Acts of a Local Nature,” and these titles were used consistently during the thirty years following that date and preceding the adoption of the present constitution. It can hardly be doubted that in this manner these terms became familar to the people, and their meanings were determined by such familiar usage. The laws published as “Acts of a general nature” were not always of uniform operation throughout the state, for that was not required by any provision of the constitution then in force. In the adoption of section 26, article II, of the present constitution, the phrase “Laws of a general nature” was employed in the sense then familiar to designate the acts, which, as experience had demonstrated, should have a uniform operation throughout the state.
It will not aid present purposes to enter the in-' teresting field of inquiry suggested, further than *108 to ascertain whether acts providing for public aid to the poor were regarded as of a general nature. In volume eighteen, LaAvs of Ohio, at page 208, is a republication of an act entitled £ ‘ an act for the relief of the poor,” which had been passed February 10, 1816; and at page 223 of. the same volume is a republication of an act entitled “An act to authorize the establishment of poor houses,” which had been passed February 26, 1816. Both acts are published under the general title ‘ ‘ Acts of a general nature.” There was further legislation upon this subject January 26, 1827, January 19, 1829, and March 14, 1831, and all the acts were published under the same general title .as acts of a general nature.
That this has been regarded as a subject for laws of a general nature under the present constitution, appears from the general course of legislation upon the subject. So far as we have observed, all the legislation of the state prior to the act now called in question has accorded with the general belief that the poor are always and everywhere with us.
Indeed, this act itself affords evidence that the belief continues to abide with the general assembly that laws upon this subject are of a general nature. If the subject were not general, the counties of Huron and Erie might have been named instead of described.
It is contended that the act is of uniform operation throughout the state. Counsel for the defendants, with much reason, insist that uniform operation is not necessarily universal operation. In the provision which limits its operation to counties having infirmaries, the act before us affords a convenient example of legislation that op *109 erates uniformly, though not universally. The act but for the proviso, is of uniform operation, because it operates universally where are found the conditions for which legislative provisions are made: that is, in all counties having infirmaries. But the petition shows that these counties have infirmaries, and the purpose of the act, is to exempt them from the operation of laws applicable to other counties presenting the same conditions. Uniformity of operation requires that laws shall operate in all parts of the state where are found the conditions which are the subjects of the legislation.
The case does not call upon tis to determine whether the requirement of uniform operation forbids the reasonable classification of counties upon substantial differences in population. Isolation is not classification. The appearance of general and uniform legislation sought to be imparted to the act by the figures employed in the description of these counties and the regard that is paid to changes in population which may be disclosed by a subsequent federal;census, do not at all affect the character of the act. Its validity must be determined, not by its form, but by its substance and practical operation. It provides exceptional legislation on the basis of a difference in population so trivial that no one supposes it to be the real ground of the distinction and it applies to no counties but to Erie and Huron.
With the wisdom or the policy which the general assembty has, through the provisions of this act, attempted to establish in the two counties named, we have nothing to do. If it be unwise, this section forbids its application to Erie and Huron counties except bjx a law of uniform operation throughout the state which shall affect the *110 interests of all constituencies and thus challenge the attention and judgment of all representatives. If it he wise,-this section beneficently requires that the people of the whole state shall share in its benefits. We are aware of no decision of this court in conflict with these views.
Demurrer overruled, and peremptory writ allowed.